**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALLISON COOPER**, on behalf of herself and all others similarly situated,<br>c/o Transport Workers Union Local 234<br>2233 Spring Garden Street<br>Philadelphia, PA 19130<br><br>Plaintiff,<br>vs.<br><br>**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY**,<br>1234 Market Street<br>Philadelphia, PA 19107<br><br>Defendant. | No.__________________<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Allison Cooper, by and through undersigned counsel, after inquiry reasonable under the circumstances, on behalf of herself and all others similarly situated, alleges as follows:

## I. INTRODUCTION

1. This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and a class action brought under the Pennsylvania counterpart, 43 Pa. Cons. Stat. §333.104 and is brought to remedy widespread violations by defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") that has deprived plaintiff, and others similarly situated, of overtime wages to which they are entitled.

2. Under both the federal and state law, employees must be paid 1.5 times their regular rate for all hours over 40 worked in a week. Under SEPTA's contract with its bus drivers (which includes plaintiff and the putative class), drivers must be paid 1.5 times their regular rate for all hours over 8 worked in a day.

3. Despite these statutory and contractual requirements, defendant SEPTA requires hundreds of its employed bus drivers who drive a "swing run" - two shifts a day, with breaks of varying lengths in between - to work *without pay altogether* between 10 and 30 minutes every day. Depending on the driver's individual shift, this unpaid but required labor pushes the driver over 8 hours of work in a day, or over 40 hours of work in a week, or both.

4. Under SEPTA's rules, drivers are required to perform a safety inspection on their vehicle before each run. SEPTA pays drivers for a portion of the work performed on the first safety inspection of the day, but SEPTA does not pay drivers who must perform a second safety inspection before the second half of their swing runs, even though these safety inspections are required. In short, drivers on swing runs are not compensated at all for their second daily required safety inspections, resulting in 10 to 30 minutes of uncompensated, but mandatory, work each time this occurs.

5. In addition, SEPTA refuses to pay all of its drivers for all of the time necessary to perform the required morning pre-trip safety inspection. In effect, all SEPTA drivers are thus forced to work, without compensation, another 10 to 30 minutes everyday. Again depending on the driver's shift, this pushes the driver over 8 hours of labor in a day, or over 40 hours of labor in a week, or both.

6. SEPTA's acts violate federal and state overtime laws as well as breach its contract with its drivers, and affect hundreds of SEPTA employees. Accordingly, this action is brought as a collective action under the FLSA and as a class action under Pennsylvania's counterpart, seeking compensatory damages, injunctive relief, and attorneys' fees.

7. Plaintiff, on behalf of herself and all others similarly situated, seeks unpaid compensation, an equal amount of liquidated damages, attorneys' fees and costs, and all other available and appropriate relief to which she, and the class she seeks to represent, are entitled.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Count 1 and has supplemental jurisdiction through 28 U.S.C. § 1367 over Counts 2 through 4.

9. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b)-(c) because the acts complained of took place in this judicial district, and because SEPTA maintains its principal place of business within this judicial district.

## III. PARTIES

10. Plaintiff Allison Cooper is an adult individual residing and working within this judicial district. For at least the last 10 years, Cooper has driven SEPTA swing runs in circumstances in which her total daily work time routinely equaled or exceeded 8 hours, and/or her total weekly work time routinely equaled or exceed 40 hours. Cooper routinely performed daily pre-trip inspections before each run, morning and afternoon.

11. Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") is a regional mass transit authority that currently operates under the authority of the Metropolitan Transportation Authorities Act, and is thus an agency, instrumentality and subdivision of the Commonwealth of Pennsylvania. SEPTA's principal office is located at 1234 Market Street, Philadelphia, Pennsylvania 19107. Defendant SEPTA is an employer within the meaning of the FLSA. In this complaint, "SEPTA" refers to all other parent, successor, predecessor and subsidiary entities to which these obligations pertain. SEPTA is subject to both the FLSA and Pennsylvania overtime statutes.

## IV. FACTUAL ALLEGATIONS

12. SEPTA has promulgated various work rules and policies covering plaintiff, including a Bus Operations Rules and Regulations Manual **(Tab A)** and a Surface Operations General Work Rules and Regulations **(Tab B)**. Plaintiff is also covered by a Collective Bargaining Agreement **(Tab C)**, setting forth terms and conditions of employment.

13. Attached at **Tab A** is a true and correct copy of the SEPTA Bus Operations Rules and Regulations Manual now in effect.

14. Attached at **Tab B** is a true and correct copy of the SEPTA Surface Operations General Work Rules and Regulations now in effect.

15. Attached at **Tab C** is a true and correct copy of the Collective Bargaining Agreement that covered Cooper and all other class members for most of the class periods.

16. Under the Collective Bargaining Agreement **(Tab C)**, drivers select either "straight runs" or "swing runs." A "straight run" is a scheduled run for which a driver works and is paid from the start time to the finish time of the run. A "swing run" is a split shift, where a driver works a morning shift and an afternoon or evening shift, with an unpaid break in between.

17. According to SEPTA work rules, drivers must report for work not less than 10 minutes before the start of their scheduled "pull out" time, *i.e.,* the time when the bus pulls out of the depot and begins its scheduled run. Drivers who fail to pull out on time are subject to discipline.

18. Drivers arriving for the second half of their swing run must arrive at the scheduled pull-out time, and are not compensated if they arrive before the pull-out time.

19. Pursuant to SEPTA's rules, bus drivers must perform a safety inspection before departure to make sure the vehicle is in good working order. After every run, drivers are required to fill out an Operator's Vehicle Condition Report. The report must be kept on the bus at all times; failure to perform the safety check and to complete the report can lead to a summons under state law.

20. SEPTA also requires operators to perform pre-trip safety inspections. According to SEPTA work rules, drivers must make a pre-trip inspection before departing from any bus yard in accordance with SEPTA procedures**.** Failure to perform the pre-trip safety inspection can lead to discipline.

21. Under SEPTA's pre-trip inspection procedures, drivers must inspect their vehicles before departure using a "Check List/Quality Control Appearance Checklist." This checklist must be signed and submitted to SEPTA. Among other things, operators are required to check:

1.1 service/parking brakes
1.2 air pressure
1.3 steering mechanism
1.4 lights and reflectors
1.5 horn
1.6 windshield wipers
1.7 rear vision mirrors
1.8 wheels, rims and tires
1.9 emergency equipment
1.10 seat belt
1.11 chock
1.12 doors
1.13 radios
1.14 P.A. system
1.15 destination signs
1.16 fare box
1.17 lift/securement device
1.18 signed previous VCR
1.19 vehicle registration and insurance card.

22. It can take anywhere from 10 to 30 minutes to complete each inspection and fill out the check list. The inspection must be performed before each departure from the depot.

23. In the past, the morning pre-trip inspection was not required, and SEPTA did not pay drivers to perform what SEPTA said was voluntary work. Some time before the commencement of the class period in this case, however, the pre-trip inspections became a requirement. While SEPTA permits and pays for drivers to get ready for the morning shift, SEPTA did not increase the amount of time it pays drivers to get ready after the pre-trip inspection became a requirement.

24. The effect, then, is that SEPTA does not pay any of its drivers to conduct the full extent of their pre-trip morning inspections. That is true because the drivers' morning obligations are greater – they must perform the pre-trip inspection – but they are given no additional paid time to perform this additional requirement.

25. The swing run drivers end up performing their second daily pre-trip inspection without compensation as well. These drivers are not compensated for *any* time spent completing the pre-trip inspection before their pull out time on the second half of a swing run, nor are the hours worked counted for purposes of overtime.

26. SEPTA has forced all drivers to work "off the clock" with respect to these pre-trip inspections by requiring them to complete the inspections without compensating them for all time spent doing the inspections or counting the hours worked for purposes of overtime.

## V. CLASS ALLEGATIONS

27. All class members share an interest in challenging SEPTA's determination that their labors in performing the pre-trips inspection is not compensable.

28. The named plaintiff will fairly and adequately represent the two classes described below. The named plaintiff is a member of both classes, has no interest antagonistic to the members of either class.

29. Both classes are large, numbering at least into the hundreds. Accordingly, joinder is impracticable.

30. Nevertheless, neither class is large enough to render class treatment unmanageable. Most of the relevant information, *e.g.*, the identity of the class members, is known by SEPTA.

31. Pursuant to Fed. R. Civ. P. 23 (a)(2), there are questions of law or fact common to both classes, including but not limited to:

a. Has SEPTA engaged in practices in systemic violation of contractual and statutory duties?

b. Are drivers entitled to salary at overtime for their past work?

c. Are the actions of SEPTA applicable to the class as a whole, entitling class members to injunctive relief?

32. The claims of plaintiff are typical of the claims of each member of both classes, and are based on and arise out of identical facts constituting the wrongful conduct of SEPTA.

33. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

34. The prosecution of separate actions by individual members of the class would create a risk of establishing incompatible standards of conduct for SEPTA.

35. SEPTA's actions are generally applicable to both classes, and plaintiff seeks equitable remedies with respect to both classes.

36. The common questions of law and fact enumerated above predominate over questions affecting only individual members of either class, and a class action is the superior method for fair and efficient adjudication of the controversy.

**COUNT 1**

**Claim Brought Under FLSA**

37. Plaintiff repeats and incorporates by reference all paragraphs of this Complaint as if fully set forth.

38 Plaintiff's first claim is brought under FLSA, 29 U.S.C. § 201 *et seq*. It is brought as a collective action under the FLSA. It covers those bus drivers who, without factoring in the time spent performing pre-trip inspection, were already working at least 40 hours a week.

39. At all times material to this action, the minimum wage and overtime provisions of FLSA set forth in § 207 of the FLSA have applied to SEPTA and to plaintiff and all others similarly situated.

40. SEPTA has willfully and intentionally engaged in ongoing and knowing violations of the overtime provisions of the FLSA by requiring plaintiff and all others similarly situated to conduct pre-trip inspections before their runs, but not paying them for all time worked performing the pre-trip inspections, and not counting the inspection time for purposes of calculating overtime.

41. As a result of SEPTA's violations of the FLSA, plaintiff and all others similarly situated have suffered damages in that they have not received proper compensation in accordance with § 29 U.S.C. § 207(a)(1) of the FLSA.

42. As a result of the unlawful acts of SEPTA, plaintiff and all other similarly situated SEPTA employees have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation to which they are legally or equitably entitled.

**COUNT 2**

**Claim Brought Under 43 Pa. Cons. Stat. § 333.104**

43. Plaintiff repeats and incorporates by reference all paragraphs of this Complaint as if fully set forth.

44. Plaintiff's Count 2 is brought under 43 Pa. Con. Stat. § 333.104 and the collective bargaining agreement between plaintiff and SEPTA. It is brought as a class claim under Fed. R. Civ. P. 23.

45. Plaintiff asserts Count 2 as a class action on behalf of the following two classes:

The **swing shift class** is

> All current and former SEPTA drivers who, at any time within three years of the commencement of this action, conducted a pre-trip inspection
>
> a. before the start of their second swing shift of the day,
>
> b. were not paid for this work, and
>
> c. who were assigned a shift that equaled or exceeded 8 hours of daily labor.

The **morning pre-trip class** is

> All current and former SEPTA drivers who, at any time within three years of the commencement of this action, conducted a morning pre-trip inspection and were assigned a shift that equaled or exceeded 8 hours of daily labor.

46. The named plaintiff is a member of, and seeks to represent, both classes.

47. Count 2 is brought by both classes under 43 Pa. Cons. Stat. § 333.104 and § 323.113 for SEPTA's breach of its Collective Bargaining Agreement.

48. The Collective Bargaining Agreement, which covers plaintiff and all putative class members, provides that SEPTA bus drivers:

1) must be paid for the hours they work and

2) must be paid time-and-a-half for all hours they work in a day over 8.

49. SEPTA's acts breach both provisions, with respect to both classes. As a result, drivers are entitled to be paid, at time-and-a-half, for the work performed in inspecting the buses, plus reasonable costs and attorneys' fees.

**COUNT 3**

**Claim Brought for Breach of Contract**

50. Plaintiff repeats and incorporates by reference all paragraphs of this Complaint as if fully set forth.

51. Plaintiff's Count 3 is for breach of contract. It arises under the Collective Bargaining Agreement between plaintiff and SEPTA. It is brought as a class claim under Fed. R. Civ. P. 23.

52. Plaintiff asserts Count 3 as a class action on behalf of the following two classes:

The **swing shift class** is

> All current and former SEPTA drivers who, at any time within three years of the commencement of this action, conducted a pre-trip inspection
>
> a. before the start of their second swing shift of the day,
>
> b. were not paid for this work, and

c. who were assigned a shift that equaled or exceeded 8 hours of labor.

The **morning pre-trip class** is

> All current and former SEPTA drivers who, at any time within three years of the commencement of this action, conducted a morning pre-trip inspection and were assigned a shift that equaled or exceeded 8 hours of daily labor.

53. The named plaintiff is a member of, and seeks to represent, both classes.

54. The Collective Bargaining Agreement, which covers plaintiff and all putative class members, provide that SEPTA bus drivers

1) must be paid for the hours they work and

2) must be paid time-and-a-half for all hours they work in a week over 40.

55. SEPTA's acts breach both provisions of the contract with respect to both classes and damages plaintiff and the putative classes, who have not been paid fully for their services.

**COUNT 4**

**Claim Brought For Unjust Enrichment**

56. Plaintiff repeats and incorporates by reference all paragraphs of this Complaint as if fully set forth.

57. Plaintiff's Count 4 is for unjust enrichment. It arises under the common law of Pennsylvania. It is brought as a class action under Fed. R. Civ. P. 23.

58. Plaintiff asserts Count 4 as a class action on behalf of the following two classes:

The **swing shift class** is

> All current and former SEPTA drivers who, at anytime within three years of the commencement of this action, conducted a pre-trip inspection:

a. before the start of their second swing shift of the day,

b. were not paid for this work, and

c. who were assigned a shift that equaled or exceeded 8 hours of daily labor.

The **morning pre-trip class** is

> All current and former SEPTA drivers who, at any time within three years of the commencement of this action, conducted a morning pre-trip inspection and were assigned a shift that equaled or exceeded 8 hours of daily labor.

59. The named plaintiff is a member of, and seeks to represent, both classes.

60. Under the facts as described above, plaintiff and both classes have conferred benefits on SEPTA through their unpaid labor.

61. It is inequitable for SEPTA to retain these benefits without compensating plaintiff and the classes, at a rate of time-and-a-half.

## COUNT 5

### Claim Brought for Violation of Pa. Wage Payment & Collection Law

62. Plaintiff repeats and incorporates by reference all paragraphs of this Complaint as if fully set forth.

63. Plaintiff's Count 5 is brought under 43 Pa. Con. Stat. § 260.1 *et seq*. for violation of the Pennsylvania Wage Payment and Collection Law.

64. Plaintiff asserts Count 5 as a class action on behalf of the following two classes:

The **swing shift class** is

> All current and former SEPTA drivers who, at any time within three years of the commencement of this action, conducted a pre-trip inspection

a. before the start of their second swing shift of the day,

b. were not paid for this work, and

c. who were assigned a shift that equaled or exceeded 8 hours of daily labor.

The **morning pre-trip class** is

> All current and former SEPTA drivers who, at any time within three years of the commencement of this action, conducted a morning pre-trip inspection and were assigned a shift that equaled or exceeded 8 hours of daily labor.

65. The named plaintiff is a member of, and seeks to represent, both classes.

66. Under the facts as described above, plaintiff and both classes have wages earned and payable from SEPTA that were not paid in the next succeeding pay period as mandated in 43 Pa. Con. Stat. § 260.3(a).

67. The wages earned and payable to plaintiff and both classes from SEPTA have remained unpaid for a period of more than 30 days.

**WHEREFORE**, plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief:

A. An order permitting plaintiff to give timely notice of this action to all persons who are employed as a driver at SEPTA. In the alternative, plaintiff requests that the Court issue such notice. Such notice should inform the recipients that this civil action has been filed, the nature of this action, and their right to opt-in to this lawsuit if they believe they suffered any of the violations alleged herein;

B. An order certifying the two classes as described with the named plaintiff as class representative for both;

C. For the collective action set forth in Count 1, damages in the amount of the class members' respective unpaid compensation, paid at a rate of time-and-half, plus an equal amount of liquidated damages, plus prejudgment interest as permitted by law;

D. For the class action set forth in Counts 2, 3, 4 and 5, damages in the amount of their respective unpaid compensation paid to a ratio of time-and-a-half, plus prejudgment interest as permitted by law;

E. For the class action set forth in Count 5, liquidated damages in an amount equal to twenty-five percent of the total amount of wages due, or $500.00 per class member, whichever is greater;

F. For both the collective action and the class action, plaintiff seeks an award sufficient to compensate the class members for any excess tax liability incurred due to receipt of judgment in a lump sum;

G. Reasonable attorneys' fees;

H. The costs and expenses of this action; and

I. Such other, further legal and equitable relief, including but not limited to any injunctive and/or declaratory relief to which they may be entitled.

Respectfully submitted,

Dated: February ___, 2006

______________________________

Patricia V. Pierce, Attorney ID No. 23129
Hannah Schwarzschild, Attorney ID No. 72620
**WILLIG, WILLIAMS & DAVIDSON**
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3600

______________________________

Wood R. Foster, Jr.
Jordan M. Lewis, Attorney ID No. 94401
**SIEGEL, BRILL, GREUPNER,**
**DUFFY & FOSTER, P.A.**
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 814-9322

**ATTORNEYS FOR PLAINTIFF**