IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| Allison Cooper, et al.,<br><br>                Plaintiffs,<br>vs.<br><br>Southeastern Pennsylvania Transportation Authority,<br><br>                Defendant. | No. 2:06-cv-00888-TMG<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND COMPLAINT** |
|---|---|

## I.    Introduction

To read defendant SEPTA's opposition brief, it would be reasonable to assume that plaintiffs' opening memorandum was laced with hyperbolic rhetoric and overheated exaggerations and accusations. How else to explain SEPTA's claim that plaintiffs' opening brief "is rife with inaccuracies, overstatements and mischaracterizations,"[1] that plaintiffs are "deliberately misleading"[2] this Court, and that their arguments are "a total fabrication of fact and misstatement of law"?[3] These are serious claims, and are discussed below.

But the simple fact is that they don't matter. Even assuming that everything SEPTA asserts is correct and undoubted, SEPTA's opposition fails. SEPTA simply has not rebutted the essential facts put into evidence by plaintiffs: that the parties agreed on settlement terms that *by intent* did not include a release of morning pre-trip inspection claims – a release that had been demanded during mediation by SEPTA and rejected during mediation by plaintiffs. The Court should grant plaintiffs' motion and demand that SEPTA live up to its agreement.

---

[1] SEPTA 4/8/2011 Br. at 1.
[2] *Id.* at 11.
[3] *Id.* at 16.

## II.    Argument

A.    **Legal standard**

A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it.[4] Because motions for the enforcement of settlement agreements resemble motions for summary judgment, the court must employ a similar standard of review. "This is not mere coincidence. The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same – both deprive a party of his right to be heard in the litigation."[5]

B.    **SEPTA's legal burden**

As with conventional summary judgment motions, plaintiffs had the initial responsibility of explaining the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits that demonstrate the absence of a genuine issue of material fact.[6] Plaintiffs accomplished this, and SEPTA doesn't argue otherwise.

As with other conventional summary judgment motions, the burden then shifted to SEPTA to set forth specific facts showing that there is a genuine issue for trial.[7] SEPTA's "burden is rigorous: the non-movant 'must point to concrete evidence in the record'; mere

---

[4] *See Hobbs & Co. v. American Investors Mgmt. Inc.*, 576 F.2d 29, 33 & n.7 (3rd Cir. 1978)("Appellants acknowledge that a district court generally has jurisdiction to enforce a settlement agreement entered into under its aegis, and as part of its enforcement powers to award damages for breach of such an agreement.")(citations omitted).
[5] *See Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3rd Cir. 1991)("This central issue-whether there was any disputed issue of material fact as to the validity of the settlement agreements-is similar to that which any court must address when ruling on a motion for summary judgment.").
[6] *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).
[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

allegations, conclusions, conjecture, and speculation will not defeat summary judgment.[8] This is where SEPTA's motion fails.

The key – and ultimately only – issues before the Court are these:

(1) Did the parties settle this case on December 3, 2010? If so,

(2) Had the parties agreed at the time of the settlement that the release wouldn't cover the morning pre-trip inspection claims?

The first question is succinctly addressed in paragraph 32 of the Pierce affidavit, which is attached to plaintiffs' opening brief, which reads:

> **On the following day, Plaintiffs and SEPTA agreed to settle for a payment of $1,750,000, inclusive of fees and costs on the terms set forth in the Term Settlement Sheet. Accordingly, I signed the Term Sheet on behalf of the Plaintiffs and sent it by facsimile to counsel for SEPTA on December 3, 2010.**

The agreement was confirmed by the parties' agreement to contact this Court to indicate the case was settled. Again, the Pierce affidavit is on point, in paragraph 33:

> **On or about Wednesday, December 15, 2010, I spoke to Ms. Bennett about whether it was time to inform the Court that we had settled the case and that we would be asking for Court approval of the settlement and entry of a stipulated judgment. We agreed that I should call the Court to determine whether and when this Court would be available to have a hearing or otherwise determine the fairness of the proposed settlement. Accordingly, I called and left a message for this Court.**

SEPTA's Bennett affidavit agrees that the case settled in exactly the manner described in the Pierce affidavit.[9] SEPTA doesn't address, *and thus doesn't rebut*, the assertions concerning the telephone call to the Court.

---

[8] *Conquest v. Hayman*, 2011 WL 1322153, *11 (D.N.J. March 31, 2011)(quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3rd Cir. 1995)).

[9] Bennett 4/8/2011 Aff. at ¶ 13 ("On the morning of December 3, 2010, I called Ms. Pierce about 10 a.m. to see whether the Steering Committee had reached a decision. She reported that the Steering Committee had reached a decision. She reported that the Steering Committee had agreed to SEPTA's terms and that she had signed the Term Sheet and had it delivered to my office. There was no specific discussion or clarifications about the terms. A copy of the Term Sheet as signed by Ms. Pierce is attached to this Declaration at **Exhibit C**.")

In sum, the evidentiary record is that *both parties believed this case settled on December 3, 2010.*

The second issue is whether the parties agreed that the settlement would include a release of morning pre-trip inspection claims. Here again, the Pierce affidavit is directly on point, providing an *unrebutted* chronology of how this very issue – *waiver of the morning pre-trip inspection claim* –

1) was *raised by SEPTA*:

   **Following this exchange [during the mediation], Ms. Bennett asked to speak to me privately. During the conversation, she reiterated that SEPTA wanted to have language concerning the morning pre-trip inspection.[10]**

2) was *rejected by plaintiffs*:

   **I told her that under no circumstances could Plaintiffs agree to any language which might "bind the union" should it decide to file a grievance under the Collective Bargaining Agreement seeking back-pay for the morning pre-trip inspection.[11]**

3) and that instead of a waiver, the parties *agreed to resolve the issue* by agreeing to language – proposed by SEPTA – that recited the claim history of this litigation:

   **Ms. Bennett suggested that the impasse on this issue might be broken if Plaintiffs would agree to language in the agreement that set forth the procedural history of the Complaint and amendments to the Complaint as set forth in Att. E.[12]**

Here is the language (proposed by SEPTA and slightly modified in discussions during the mediation) to which the parties agreed to resolve the morning inspection issue:

> On February 26, 2006, Plaintiffs filed a Complaint against SEPTA alleging violations of the Fair Labor Standards Act.

---

[10] Pierce 2/22/2011 Aff. at ¶ 29.
[11] *Id.*
[12] *Id.*

4

> Specifically, Plaintiffs alleged that SEPTA failed to compensate them adequately for conducting a required CDL pre-trip inspection before their scheduled pull-out time from the bus depot in the morning.
>
> In their Complaint, Plaintiffs alleged that SEPTA required bus operators to report not less than 10 minutes before the start of their scheduled "pull-out" time in the morning.
>
> Plaintiffs alleged that the time allotted to conduct the required CDL pre-trip inspection was inadequate.
>
> Plaintiffs also alleged that SEPTA failed to pay swing run operators any compensation to conduct a required CDL pre-trip inspection before their scheduled pull-out time from the bus depot in the afternoon.
>
> On May 27, 2009, Plaintiffs filed an Amended Complaint and repeated the allegations set forth in their original Complaint.
>
> On June 10, 2009, Plaintiffs filed a Second Amended Complaint and repeated the allegations set forth in their original Complaint.
>
> On May 3, 2010, Plaintiffs filed a Third Amended Complaint. In the Third Amended Complaint, Plaintiffs reasserted their allegation that SEPTA did not pay them any compensation for the afternoon CDL pretrip inspection. For the first time, Plaintiffs alleged that SEPTA had failed to compensate them for mid-day travel during a single workday.
>
> In their Third Amended Complaint, although Plaintiffs contended that the 10 minutes that SEPTA allotted them to conduct the morning CDL pretrip inspection was inadequate, they failed to pursue their allegation that they were entitled to additional compensation for the CDL pretrip inspection in the morning.[13]

In sum, then, plaintiffs have submitted evidence that during the mediation:

- ■ SEPTA proposed that the settlement include a release of the morning pre-trip inspection claim;

- ■ The proposal was expressly rejected by plaintiffs; and

- ■ SEPTA then took the waiver off the table and replaced it with language reciting some of the pleading history of the case. The issue was not mentioned again.

---

[13] *Id.* at **Att. E.**

Somewhat improbably, SEPTA's Bennett affidavit tracks almost identically the Pierce affidavit.[14]

The history set out above makes up the entire body of evidence before the Court as to whether the mediated settlement included a waiver of the morning pre-trip inspection claim. In sum, then, the undisputed record before the Court is that

- ■ the parties thought they had a settlement and represented that fact to this Court;

- ■ during the settlement negotiations, SEPTA introduced a term that would have required plaintiffs to waive morning pre-trip inspection claims;

- ■ plaintiffs expressly rejected that proposal;

- ■ SEPTA dropped it in return for plaintiffs' agreement to replace it with language reciting some of the pleading history of the case.

*Nowhere* does SEPTA now allege

- ■ that it rejected the plaintiffs' refusal to accept a waiver of the morning pre-trip inspection claim;

- ■ that during negotiations, SEPTA conditioned its term sheet upon a waiver of the morning pre-trip inspection claim;

- ■ that such a waiver was included in any of the writings that reflected the agreed-upon settlement terms; or

- ■ that plaintiffs eventually capitulated and agreed to waive their morning pre-trip inspection claim.

In its brief, SEPTA *appears* to introduce evidence that a different result was reached by the parties in their mediation, asserting "[]SEPTA never agreed to any settlement that did not include Plaintiffs' release of all FLSA claims against it, including any claim for the morning inspection." *The problem with this assertion is that not one of the three paragraphs cited to*

---

[14] *Bennett* 4/8/2011 Aff. at ¶¶ 62 – 63.

*support this contention – paragraphs 13-14 and 17 of Bennett's affidavit – comes anywhere close to supporting this assertion.*

Ms. Bennett's paragraph 13, in its entirety, states:

**On behalf of SEPTA, I drafted the settlement document and stipulated judgment. On December 17, 2010, I forwarded the documents to Plaintiffs' counsel for review. As drafted, paragraphs 5 and 6(a) of the agreement required Plaintiffs to release all claims for pay that had been asserted in the original complaint and succeeding complaints based on the facts giving rise to this lawsuit. The settlement document as drafted on December 17, 2010 is attached to this Declaration at Exhibit D.**

Bennett's narrative touches only upon documents she created two weeks after the settlement resolved. *This paragraph neither addresses nor rebuts Ms. Pierce's description of what the parties agreed to on December 3, 2010.*

Paragraph 14, in its entirety, states:

**As drafted by SEPTA, the stipulated judgment likewise required Plaintiffs to release all claims for pay that had been asserted in the original and succeeding complaints, and incorporated the terms of the settlement document. The stipulated judgment as drafted on December 17, 2010 is attached to this Declaration at Exhibit E.**

Apart from failing to mention the fact that plaintiffs had explicitly stipulated to the Court (long before mediation) that it was *not* pursing any claim involving morning pre-trip inspection, this paragraph has nothing to do with what the parties agreed to on December 3. It merely reflects SEPTA's *post-mediation* demands, as of December 17.

And finally, Paragraph 17, in its entirety, states:

**SEPTA would not agree to language releasing claims that "were or could have been brought," because that phrasing created confusion as to which claims the Plaintiffs would have been releasing. In particular, claims for the morning pre-trip inspection would remain at issue, because, while those claims were included in the original Complaint (and, arguably, in the Amended and Second Amended Complaint), SEPTA's position was, and is that they could *not* "have been brought" in the litigation because they needed to be arbitrated through the union grievance process. SEPTA's desire for**

7

**finality in the agreement required that more specific language be used.**

Plaintiffs don't understand how this concession (that the morning pre-trip inspection claims couldn't have been brought in this lawsuit) helps SEPTA. Regardless, paragraph 17 has literally *nothing* to say about the deal agreed to by the parties on December 3 after two long days of mediation.

That's all the distance the Court need travel. SEPTA has failed to rebut plaintiffs' motion. *The settlement should be approved and enforced.*

### III. SEPTA's Collateral Issues

Rather than discussing the evidence and the record before the Court, SEPTA consumes much of its brief focusing on—and personalizing—collateral issues. Virtually every comment it makes is either irrelevant or represents a misunderstanding of points made by plaintiffs.

SEPTA's principal bit of diversion involves an email exchange between plaintiffs' counsel – obviously consisting of work product – that was inadvertently sent to SEPTA counsel. SEPTA argues that the exchange demonstrates that "Plaintiffs' counsel clearly understood that SEPTA intended to settle this case only if such a settlement included a waiver of claims for the morning pre-trip inspection."[15]

That is simply false.

Finessing (for now) the question of the email's admissibility and the manner in which SEPTA acquired it, all it demonstrates is that – *as plaintiffs' counsel had feared* – SEPTA was going to back off the settlement and hold it hostage to a renewed demand that the release include the morning pre-trip inspection claims. The unrebutted chronology now before the Court reflects that plaintiffs had rejected SEPTA's demand during the negotiations *and that SEPTA did not*

---

[15] SEPTA 4/8/2011 Br. at 10.

8

*revive it until after two weeks after the settlement was reached.*

Similarly, SEPTA seems to suggest[16] that plaintiffs never really let go of the morning pre-trip inspection claim. Again, this is false. Five years ago, on July 17, 2006, plaintiffs stipulated to the Court:

> Though the Complaint does not reflect it (Cooper's papers opposing SEPTA's motion to dismiss does) Cooper has narrowed her lawsuit to a single claim and now asserts a single class, brought under the FLSA. The class consists of all SEPTA "swing run" drivers (defined as all drivers who work two shifts a day, with varying breaks between their runs) who work at least 40 hours a week but who are not paid for their required **afternoon pre-trip vehicle inspections**.[17]

With that representation to SEPTA and the Court, plaintiffs dropped – and never revived – all claims related to the morning pre-trip inspection.

At various points in the brief, SEPTA hints that the union that covers SEPTA's drivers was itself a party to this litigation. Though plaintiffs aren't clear as to what might be implied by this, the union is not (and never was) a party to this case. *The union participated in the mediation because SEPTA invited it to participate.* The union was separately represented at the mediation, sequestered in separate offices, and met with SEPTA without plaintiffs being present. The union delegation left the mediation before settlement was reached, and were never aware of the terms of the proposed settlement to plaintiffs' knowledge.

SEPTA complains that plaintiffs cite no authority supporting their position that a claim that SEPTA maintains cannot be brought in this Court and must be arbitrated can still be settled in circumstances in which the plaintiffs have expressly dropped the claim and the mandatory opt-in notice didn't even mention the claim.[18] Here, the shoe is on the other foot. It is SEPTA's

---

[16] *See*, e.g. Bennett 4/8/2011 Aff. at ¶17.
[17] Docket No. 16-2, at p. 4.
[18] *Id.* at 15.

9

burden to show that a settlement that extends this far beyond the complaint is permissible, and it hasn't done so.

SEPTA complains, remarkably, that plaintiffs are attempting to "smear" SEPTA by suggesting to the Court that SEPTA now seeks to require a waiver by all drivers (not just plaintiffs) of morning pre-trip inspection claims. Plaintiffs genuinely believed that it was possible that was the import of SEPTA's post-mediation position, and are happy to learn otherwise.

SEPTA also suggests that plaintiffs are falsely feigning surprise about the possibility that the settlement would touch in any way on the topic of morning pretrip inspections, and that SEPTA somehow hoodwinked them by agreeing "to certain settlement terms and then covertly 'slipping' a new release term into the agreement."[19] If SEPTA reads plaintiffs' brief to say that they didn't know SEPTA wanted a release covering the morning pre-trip inspection claim, then it is simply misreading. Plaintiffs' brief and the Pierce affidavit describe exactly how this particular release provision was *demanded* by SEPTA at the mediation, *rejected* by plaintiffs, and *compromised* by the addition of language reciting the pleading history.

Plaintiffs' point is just this: the parties agreed during the mediation to a settlement that (after specific negotiation) did *not* include a release of the morning pre-trip inspection claim. Two weeks after settlement was reached – as privately feared by plaintiffs' counsel – SEPTA resurrected its demand.

Finally, SEPTA argues that plaintiffs' alternative request (that they be permitted to add a claim concerning the morning pre-trip inspection claim if this motion isn't granted) should be rejected because plaintiffs haven't formally brought a motion. Plaintiffs submit that, given these

---

[19] *Id.* at 1. Nowhere in their brief did plaintiffs use the word "slip" or "slipping."

circumstances, there is more than enough paper before the Court to adequately inform it of the issues, and that this Court certainly has the inherent authority to grant the requested alternative relief. At minimum, if the Court denies plaintiffs' motion to enforce and approve the settlement, then plaintiffs request an early status conference to discuss this issue, among others.

## IV. Conclusion

SEPTA's opposition founders on the evidence. It has not rebutted plaintiffs' showing that the settlement reached on December 3 expressly – and after specific negotiation on the topic – did not include a waiver of the morning pre-trip inspection claims. The Court should grant plaintiffs' motion and permit this case to conclude.

Dated: April 20, 2011

/s/JML6410_____
Jordan M. Lewis
Wood R. Foster, Jr.
**SIEGEL, BRILL, GREUPNER, DUFFY & FOSTER, P.A.**
100 Washington Avenue South
Suite 1300
Minneapolis, MN 55401
(612) 337-6100

**WILLIG, WILLIAMS & DAVIDSON**
1845 Walnut Street
24th Floor
Philadelphia, PA 19103
(215) 656-3693

**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

      I, Jordan M. Lewis, certify that on this 20th day of April, 2011, the foregoing Reply Memorandum in Support of Motion to Approve Settlement or, in the Alternative, for Leave to Amend Complaint was filed electronically and is available for viewing and downloading from the ECF System.

                              /s/ JML6410
                              Jordan M. Lewis